UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Jason Rollins,<br><br>　　　　　　Defendant.<br>_____ | Case No. 3:17cr-0002-CMK<br><br><br>Memorandum of Decision and<br><br>Judgment |

This case came on regularly for trial on November 28, 2017, at the United States District Court in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge, presiding; the United States appeared by and through Rule 180 Officer, William Cochran, of the National Park Service[1]; and the defendant, Jason Rollins, appeared by and through certified law students, Julian Davlin and Kyle Hofmeister; assisted by Assistant Federal Defender, Linda Allison.

The matter proceeds by way of a superseding information filed on December 30, 2016,

---

[1] The United States Attorney's Office appeared on behalf of the National Park Service throughout the pendency of this case until a few days prior to trial. The United States Attorney Office "USAO" was instrumental in all decisions such as the inclusion of additional counts in the Information filed on November 30, 2016; and the Superceding Information filed on December 30. 2016. It also agreed to dismiss the Class A charges which allowed the case to be transferred back to Redding, California. For reasons unknown to the court, the USAO "dumped" the case back to Whiskeytown just prior to the scheduled trial date. As Whiskeytown's Rule 180 officer (180 officer) was a witness in the case, Whiskeytown was required to recruit other 180 officers, including one from the Veterans Administration to prosecute the case. It appeared to the court that the USAO had loaded the charging documents with duplicitous counts and then cast Whiskeytown adrift to fend for itself. With this in mind, the court was sympathetic to the plight of the 180 officer in prosecuting this case that had not been properly developed or packaged by the USAO. Basically, the Whiskeytown prosecutor was given a dull knife for a gun fight.

1

charging the defendant in Count One of violating 36 C.F.R. § 2.35(b)(2), possession of a controlled substance[2]; Count Two of violating 18 U.S.C. § 13, incorporating Cal. Health & Safety Code § 11364(a), possession of drug paraphernalia[3]; Count Three of violating 36 C.F.R. § 4.12, failure to obey traffic control devices[4]; Count Four of violating 36 C.F.R. § 2.23(b), failure to pay recreational use fees[5]; Count Five of violating 36 C.F.R. § 1.5(f), violation of closure order and public use limitations[6]; Count Six of violating 36 C.F.R. § 4.2, failure to obey posted signs in violation of State law[7]; Count Seven of violating 36 C.F.R. § 4.2, incorporating California Vehicle Code § 5902, failure to notify DMV of ownership transfer. Counts Eight and Nine were dismissed by the court on August 17, 2017. [Doc. 34].

Upon completion of the government's case, the defendant moved for a judgment of acquittal pursuant to Rule 29, F.R. Crim. P. The court granted defendant's motion as to Count 7. The court reserved ruling on the remaining counts (Rule 29(b)) and the defendant's case was limited to the

---

[2] § 2.35 Alcoholic beverages and controlled substances.

(b)Controlled substances. The following are prohibited:
....
(2) The possession of a controlled substance, unless such substance was obtained by the possessor directly, or pursuant to a valid prescription or order, from a practitioner acting in the course of professional practice or otherwise allowed by Federal or State law.

[3] Health and Safety Code 11364.

(a) It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b), (c), or (e) or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (2) of subdivision (d) of Section 11055, or (2) a controlled substance that is a narcotic drug classified in Schedule III, IV, or V.

[4] § 4.12 Traffic control devices.

Failure to comply with the directions of a traffic control device is prohibited unless otherwise directed by the superintendent.

[5] § 2.23 Recreation fees.

(a) Recreation fees shall be established as provided for in part 71 of this chapter.
(b) Entering designated entrance fee areas or using specialized sites, facilities, equipment or services, or participating in group activities, recreation events, or other specialized recreation uses for which recreation fees have been established without paying the required fees and possessing the applicable permits is prohibited. Violation of the terms and conditions of a permit issued in accordance with part 71 is prohibited and may result in the suspension or revocation of the permit.

[6] 36 C.F.R. § 1.5

(f) Violating a closure, designation, use or activity restriction or condition, schedule of visiting hours, or public use limit is prohibited.

[7] 36 C.F.R. § 4.2

(a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.
(b) Violating a provision of State law is prohibited.

introduction of Def. Exh. A, a California medical cannabis prescription (marijuana script) issued to defendant and appearing to be valid during the time in question.

The incident stems from a contact by National Park rangers and the defendant within the Whiskeytown National Recreational Area (Whiskleytown) on or about March 8, 2016.

On the day in question, Whiskeytown Rangers Jeremiah Hockett, Nick Henke and Seth Gayner of Whiskeytown were dispatched to the entrance of gated road leading to the Crystal Creek Boys Camp (Boys Camp) within the interior boundary of Whiskeytown. The Rangers discovered that two unattended vehicles were parked near the gate inside the park boundary, neither of which properly displaying the required Whiskeytown Recreational Passes (entrance passes).

The Rangers observed the defendant, Jason Rollins (Rollins) and a companion on the opposite side of a gate to the road leading to the Boys Camp which was referred to during trial as the "left road." At some point, to the far side of the gate where the defendant was first observed, the land is leased to the state of California. For purposes of this decision, the state land leased to the state of California and Boys Camp are considered synonymous. The court received little evidence as to the actual location of the boundary between Boys Camp and Whiskeytown. For the reasons set forth below, however, this territorial or jurisdictional distinction is not an issue in this case.

Gov. Exhs. 6, 7 and 8 are photographs depicting two signs prohibiting access to the far side of the gate where Rollins and his companion were first observed. One sign affixed to the gate read "no trespassing, violators will be prosecuted" and another sign affixed on an "a frame" barricade (sawhorse) located on the far side of the gate read "state property, keep out, gate no. 50." These photographs were taken nine months after the contact, predictably in anticipation of trial.

**Signage and Closed Area**.

Counts 3, 4 and 6 of the information charge the defendant with his failure, in some manner, to abide by the prohibitions set forth on the signs located on the left gate and sawhorse and being in in the Boys Camp which was a closed area.

Ranger Hockett, however, was unsure whether any of the signs were present on the day in question. Ranger Henke could not recall whether the sawhorse sign was in an upright position

during this contact. Ranger Gayner stated "yes" to the question whether there were any signs indicating the area was closed. Since this was a leading question, and the word "closed" does not actually appear on any of the signs, the court is left without a clear picture of what signage, if any, was present on the day in question.

Although, Counts 3, 4 and 6 do not require proof of mens rea, <u>United States v. Wilson</u>, 438 F.2d 525 (9th Cir.1971) (interpreting a Title 36 C.F.R. violation), this court, out of fairness, has always required some evidence of adequate notice such as proper signage before imposing criminal liability.

Although implied, the court did not receive any evidence to support a finding that the gate to the left road was situated on the Boys Camp/Whiskeytown boundary[8].

For these reasons, the court will grant defendant's Rule 29(b) motion.

**Entrance Fee.**

In Count 4, the defendant is charged with failing to pay Whiskeytown's entrance fee in violation of § 2.23(b). To establish a violation of 36 C.F.R. § 2.23(b) the government must prove the following elements:

(1) That the offense occurred within the interior boundaries of Whiskeytown;

(2) That Whiskeytown is a designated Federal recreation fee use area; (See 36 C.F.R. §§ 71.1 <u>et</u>. <u>seq</u>.)[9];

---

[8] Even if the government had established the actual location of the boundary, defendant's mere presence on the far side of the gate to the left road, appeared to be innocuous and probably could have been rectified by way of an adequate warning from the ranger. Here, defendant was only several feet over the perceived boundary (the far side of the gate). His vehicle was not parked in a closed area, and no evidence was presented that he was involved in any other type of activity, wrongful or otherwise. Generally, the government seeks prosecution in these "closed area" cases when the defendant is also involved in some other type of wrongful conduct.

[9] 36 C.F.R § 71.1 Application.

This part is promulgated pursuant to section 4, Land and Water Conservation Fund Act of 1965, 16 U.S.C.A. 4601-6a (Supp., 1974), and section 3, Act of July 11, 1972, 86 Stat. 461. Any Federal recreation fee charged by any bureau of the Department of the Interior shall be charged according to criteria set forth in this part.

36 C.F.R. § 71.2 Types if Recreation Fees.

There shall be three types of Federal recreation fees:

(a) Entrance fees, charged either on an annual or single-visit basis, for admission to any Designated Entrance Fee Area;

1         (3) That the defendant entered Whiskeytown without paying the required entrance fee.

Ranger Hockett testified that upon his arrival at the closed gate to the left road, he was unable to locate the required entrance fee pass in the Nissan pick-up. Ranger Henke asked the defendant and his companion "about recreational passes," but his testimony was incomplete leaving the court unable to determine if and how the defendant responded to this inquiry. The court is satisfied that the pick-up belonged to the defendant. Ranger Henke testified that the defendant admitted to the same during the contact. It is too simple to argue, however, that the mere absence of the entrance fee pass from the defendant's pick-up satisfies the government's case. As with many cases, the pass could have been on the floorboard, in the defendant's pocket or elsewhere. It is not for the court to argue the defendant's case, but it is also not the court's responsibility to assume by osmosis that the absence of the entrance pass from the windshield equates to a finding of guilt. Although it is clear that the defendant was within the interior boundaries of Whiskeytown, it was not proven that he failed to pay the entrance fee. The government offered no evidence as to how Whiskeytown imposes its entrance fee. Although the entrance fee appears to be applicable to

---

(b) Daily recreation use fees for the use of specialized sites, facilities, equipment or services furnished at Federal expense; and
(c) Special recreation permit fees for specialized recreation uses, such as, but not limited to, group activities, recreation events, and the use of motorized recreation vehicles.

36 C.F.R. § 71.3 Designation.

(a) An area or closely related group of areas shall be designated as an area at which entrance fees shall be charged (hereinafter "Designated Entrance Fee Area") if the following conditions are found to exist concurrently:
(1) The area is a unit of the National Park System administered by the Department of the Interior;
(2) The area is administered primarily for scenic, scientific, historical, cultural, or recreation purposes;
(3) The area has recreation facilities or services provided at Federal expense; and
(4) The nature of the area is such that entrance fee collection is administratively and economically practical.

(b) Any specialized site, facility, equipment or service related to outdoor recreation (hereinafter "facility") shall be designated as a facility for which a recreation use fee shall be charged (hereinafter "Designated Recreation Use Facility") if:
(1) For each Designated Recreation Use Facility, at least one of the following criteria is satisfied:
(i) A substantial Federal investment has been made in the facility,
(ii) The facility requires regular maintenance,
(iii) The facility is characterized by the presence of personnel, or
(iv) The facility is utilized for the personal benefit of the user for a fixed period of time; and,

(2) For each Designated Recreation Use Facility, all of the following criteria are satisfied:
(i) The facility is developed, administered, or provided by any bureau of the Department of the Interior,
(ii) The facility is provided at Federal expense, and
(iii) The nature of the facility is such that fee collection is administratively and economically practical.
. . . .

individuals (as opposed to vehicles) entering National Park property, Whiskeytown chooses to enforce compliance upon individuals by requiring vehicles to display the entrance fee pass on the windshield[10]. Since the court did not receive any evidence how Whiskeytown imposes and enforces its entrance fee requirement, it is difficult to find the defendant guilty, without more, for simply failing to display his entrance fee pass in his vehicle. For this reason, the court grants defendant's Rule 29(b) motion.

**Marijuana Cigarette.**

After determining the defendant's identity, Rollins was arrested by the Whiskeytown rangers on an outstanding state warrant. In searching the vehicle, Hockett discovered what he believed was a hand-rolled marijuana cigarette (joint) and a glass pipe containing residue consistent with methamphetamine use (meth pipe). It does not appear that either Rangers Gayner or Henke were involved in the physical search of defendant's vehicle. Gayner testified that his involvement with the joint and meth pipe was limited to "putting [them] into evidence."

Officer Henke identified the joint as "marijuana," and supported this conclusion by testifying about his experience and attendance and participation in numerous classes and academies throughout his career that emphasized drug recognition and identification. Henke also testified that he has been involved in more than 500 hundred cases involving marijuana during his employment at Whiskeytown. Ranger Gaynor testified that he was responsible for "putting the [joint] in evidence" He also described his history and experience in marijuana arrests and familiarity with the drug.

Defendant challenges this count on several fronts. He first argues that there was never any type of tests performed on the joint. The rangers did not conduct either a field test or a subsequent

---

[10] The Whiskeytown website provides that:

"All vehicles parked at Whiskeytown must display a valid entrance pass on the driver's side of the dashboard. Citations for failure to display a permit start at $130. By purchasing a pass, you are directly contributing to improvements at Whiskeytown." The court did not receive this website information into evidence, nor copies of any special orders or regulations applying to Whiskeytown.

lab test to establish that the joint contained marijuana[11]. Defendant contends that the rangers' testimonies based on personal observation, education and experience are individually and collectively insufficient to sustain a conviction.

The court agrees. Proof of the joint being marijuana can be circumstantial and proved by experienced law enforcement officers. With respect to marijuana (excluding other types of controlled substances), an officer's familiarity with its properties based on past experience coupled with present observation or identification may be sufficient to establish its identity. Unlike other controlled substances, marijuana is not an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance.

Here, we have no such testimony. Gov. Exh. 2 was simply a hand rolled cigarette. Without evidence that the rangers inspected the cigarette's contents, the identification appears to be nothing more than an educated guess.

Defendant next contends that defendant possessed a valid marijuana script, an affirmative defense under § 2.35(b). Def. Exh. A. The language in this section prohibits the possession of marijuana within National Parks "unless [it was obtained] pursuant to a valid prescription or order."

The language set forth in defendant's marijuana script (Def. Exh. A) does not support this interpretation. The controlling language in the script provides that "patient understands that the use of cannabis remains illegal under Federal Law and that neither the physician nor the physician's employees have indicated otherwise".

For the reasons stated, the court grants defendant's Rule 29(b) motion.

**Meth Pipe**.

Along with the discovery of the joint in defendant's vehicle, Ranger Hockett also found

---

[11] The USAO had this case for over 20 months before pushing it back to Whiskeytown. The court realizes that after the Supreme Courts decision in Melendez–Diaz v. Massachusetts,557 US 305, 129 S.Ct. 2527, 2532, 2542, 174 L.Ed.2d 314 (2009) (Melendez–Diaz), the cost of testing becomes almost prohibitive in most cases. Melendez-Diaz held that a certificate of drug analysis is testimonial and that its admission, unaccompanied by the testimony of the analyst who performed the testing, violates a defendant's right to confrontation. The government, however, can't have it both ways. As this case languished for a year and a half, the government should have anticipated that the defendant was not interested in a plea agreement and probably posturing for trial, thus necessitating some type of testing or expert opinion.

what he describes as a "meth pipe."[12]

As with the joint, the rangers all identified the pipe as a "meth pipe" based again on their knowledge, experience and education.

Defendant again argues that proof that the pipe constituted "drug paraphernalia" under Cal. Health & Safety Code § 11364(a) is insufficient since there was neither a field test nor a lab test to establish that the residue in the bowl was in fact methamphetamine (meth). The court agrees.

Although Ranger Hockett sufficiently describes discovering a "black and white residue" in the bowl of the pipe, he admits that it was an insufficient amount to test. Ranger Henke testified the pipe was a "glass meth pipe with residue," but the court is unclear whether he was identifying Gov. Exh. 1, or simply the language written on the evidence report.

Unlike marijuana, the identification of methamphetamine residue may require more than the simple identification by trained officers based on their experience and education. Had these factors been more adequately developed during trial, the court might have considered ruling otherwise. This, however, did not occur. Ranger Hockett testified that his involvement in "other cases" involving methamphetamine, he would routinely test the residue where there existed a "testable amount." From this testimony, it must follow that the residue in this case was apparently insufficient for testing. Without expert testimony, the court must ask whether an amount insufficient for testing is also an amount insufficient for visual identification.

Ranger Henke simply identified Gov. Exh.1 as a "meth pipe" without further description. Ranger Gayner described the residue in the pipe as "[j]ust burnt out crusty looked like meth". Ranger Gayner also testified that the pipe itself did not constitute "drug paraphernalia" per se and could be purchased legally in the marketplace. Thus, if the pipe was used in California with recreational marijuana, it would not be considered drug paraphernalia. The court is then left with a legal pipe having an untestable amount of residue.

For the reasons stated, the court grants defendant's Rule 29(b) motion.

---

[12] No other drugs were discovered during Ranger Hockett's search. The discovery of methamphetamine would have assisted the court in arriving at a finding that the pipe was drug paraphernalia.

CONCLUSION

The court grants defendant's motion for judgment of acquittal pursuant to Rule 29(b), F.R. Crim. P.

DATED: January 24, 2018

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE